Albert P. Barker, ISB #2867
BARKER ROSHOLT & SIMPSON LLP
1010 W. Jefferson, Ste. 102
P.O. Box 2139
Boise, Idaho 83701-2139
Telephone: (208) 336-0700
Facsimile: (208) 344-6034
    apb@idahowaters.com

James C. Tucker, ISB #2038
Sarah W. Higer, ISB #8012
IDAHO POWER COMPANY
1221 W. Idaho St.
P.O. Box 70
Boise, Idaho 83707
Telephone: (208) 388-2112
Facsimile: (208) 388-6935
    JTucker@idahopower.com
    SHiger@idahopower.com

*Attorneys for Idaho Power Company*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO POWER COMPANY,    ) | Case No. _____ |
|     ) | |
|     Plaintiff,    ) | |
|     ) | |
| vs.    ) | **COMPLAINT** |
|     ) | |
| UNITED STATES    ) | (Clean Water Act, Administrative Procedure |
| ENVIRONMENTAL PROTECTION    ) | Act) |
| AGENCY, AND SCOTT PRUITT, IN    ) | |
| HIS OFFICIAL CAPACITY AS    ) | |
| ADMINISTRATOR OF EPA, AND    ) | |
| CHRIS HLADICK IN HIS OFFICIAL    ) | |
| CAPACITY AS ADMINISTRATOR    ) | |
| OF EPA REGION 10,    ) | |
|     ) | |
|     Defendants.    ) | |
| _____) | |

COMES NOW, the Idaho Power Company ("Idaho Power"), and for cause of action against the Environmental Protection Agency, its Administrator, Scott Pruitt, and Regional Administrator, Chris Hladick, allege and aver as follows:

## NATURE OF THE CASE

### I.

The Environmental Protection Agency ("EPA") has violated the Clean Water Act ("CWA") and the Administrative Procedure Act ("APA") by failing to perform a mandatory duty under § 303(c) of the CWA. In 2012, the State of Idaho ("Idaho") promulgated a site-specific temperature standard to protect the beneficial use of salmonid spawning in the Snake River below Hells Canyon Dam. The EPA has intentionally delayed action on Idaho's site-specific standard as a means of delaying and effectively disapproving the standard for reasons that Congress did not intend EPA to consider when acting on state water quality standards.

### II.

Idaho lawfully adopted and submitted a site-specific standard for the Snake River below Hells Canyon Dam. Idaho submitted that site-specific standard to EPA for approval on June 8, 2012. Prior to promulgation, Idaho obtained the opinion of NOAA Fisheries that Idaho's proposed site-specific standard protected Snake River fall Chinook, an anadromous species listed as threatened under the Endangered Species Act ("ESA"), in the affected reach of the Snake River.

### III.

EPA has no authority or discretion under the CWA to disapprove a state's site-specific water quality standard as long as that standard meets the minimum requirements of the CWA.

### IV.

COMPLAINT                                                                 -2

EPA has a mandatory duty under the CWA to approve the state's standard within 60 days of submission or EPA must advise the state of specific changes necessary for the standard to comply with the CWA within 90 days of submission. As of this date, EPA has done neither. No action has been taken by EPA for over five (5) years, in violation of the CWA.

## PARTIES

### V.

Idaho Power is an Idaho corporation with its principal place of business in Boise, Idaho. Idaho Power is a citizen authorized under the CWA to bring an action under the citizen suit provisions of the CWA. Idaho Power owns and operates the Hells Canyon Complex of hydroelectric projects on the Snake River just upstream of the portion of the Snake River affected by Idaho's site-specific standard. Idaho Power is significantly, directly and adversely affected by EPA's actions and inactions described in this Complaint.

### VI.

EPA is the federal agency charged with administering the Clean Water Act. EPA is obligated to timely review promulgation of state water quality standards. EPA does not have the primary responsibility under the ESA for identification of the needs of listed species. EPA maintains an office in Boise, Idaho. Defendant Scott Pruitt is the Administrator of EPA charged with ensuring that EPA carries out its legal duties. Administrator Pruitt has ultimate responsibility over EPA's review of state water quality standards and EPA's consultation with the Services. Defendant Chris Hladick is the Administrator of EPA Region 10 and is responsible for the action and inaction of EPA's Region 10 office, including EPA's action and inactions described herein.

///

///

COMPLAINT                                                                                          -3

## JURISDICTION AND VENUE

### VII.

Idaho Power brings this action pursuant to the CWA, 33 U.S.C. § 1365(a)(2), and the

Administrative Procedure Act, 5 U.S.C. § 500, et seq. and §§ 701–706. This Court has

jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201 and 2202.

### VIII.

Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e), because Idaho

Power is incorporated and headquartered in Boise, Idaho, because EPA maintains offices in this

District, because Idaho's standard was promulgated in this District and because EPA has failed

to act upon a water quality standard promulgated by Idaho that would be effective in this

District. EPA's failure to consult and failure to act on Idaho's lawfully adopted site-specific

standard adversely affects Idaho Power's relicensing of the Hells Canyon Complex, a significant

portion of which is located in this District.

### IX.

By letter dated and postmarked October 31, 2013 (attached hereto as Exhibit A), Idaho

Power notified EPA of its violations of the CWA and the APA and of Idaho Power's intent to

sue for those violations, among others. Nevertheless, EPA has intentionally refused to comply

with the CWA. EPA's failure to take action is an intentional filibustering tactic designed to

effectively deny approval of Idaho's site-specific standard.

## FACTUAL BACKGROUND

### X.

Idaho Power owns and operates the Hells Canyon Complex ("HCC") located on the

Snake River in Washington County, Idaho. The Hells Canyon Complex consists of Hells

Canyon, Oxbow and Brownlee dams, reservoirs and associated hydroelectric facilities. Under the

COMPLAINT                                                                          -4

Federal Power Act ("FPA"), Idaho Power was granted a license in 1955 to operate these three facilities as a single project (Project No. P-1971). In 2003, Idaho Power filed an application with the Federal Energy Regulatory Commission ("FERC") to relicense the HCC under the FPA. The original license for the HCC expired in 2005. Idaho Power has been operating the HCC under annual licenses issued by FERC since that time.

## XI.

In conjunction with the licensing of the HCC, Idaho Power has applied for certifications under § 401 of the CWA from the states of Oregon and Idaho that discharges from the HCC comply with state water quality standards. One of the water quality standards involved in the § 401 certification process is the standard for salmonid spawning in the Snake River below Hells Canyon Dam, the most downstream dam of the HCC.

## XII.

In 2010, Idaho Power petitioned the Idaho Department of Environmental Quality ("DEQ") to adopt a revised site-specific standard for salmonid spawning in the Snake River below Hells Canyon Dam. In response to that petition, DEQ initiated negotiated rulemaking under Idaho law. Idaho Power, EPA, NOAA Fisheries, the U.S. Fish and Wildlife Service and others participated in that rulemaking. EPA commented to DEQ that EPA preferred that DEQ not adopt the site-specific standard, but instead should keep the existing standard in place during relicensing of the HCC. EPA also expressed "concerns" that Idaho's proposed standards may affect a listed species, Snake River fall Chinook, but offered no specific scientific data or analysis in support of those concerns. EPA did not consult with NOAA Fisheries over its "concerns." EPA provided no scientific data to DEQ during the rulemaking process, suggesting that the proposed site-specific rule did not comply with the CWA.

COMPLAINT                                                                                    -5

## XIII.

The data and scientific analysis submitted in the negotiated rulemaking process, including peer reviews undertaken by eminent scientists in the field of salmon biology and migration, support DEQ's decision to adopt the Idaho site-specific standard. Snake River fall Chinook spawn below Hells Canyon Dam and were listed as a threatened species under the ESA in 1992. The spawning temperatures for the time period at issue in Idaho's site-specific standard were set to protect the spawning needs of Snake River fall Chinook below Hells Canyon Dam. No other salmonids spawn during this time period in this segment of the Snake River. Therefore, spawning by Snake River fall Chinook is the beneficial use intended to be protected under the existing and the proposed site-specific temperature standard.

## XIV.

NOAA Fisheries ("NOAA") is the federal agency responsible for the protection of Snake River fall Chinook under the ESA. NOAA is designated by federal law as the expert in management of anadromous fish, including Snake River fall Chinook. DEQ asked NOAA for its opinion on Idaho's proposed standard. NOAA submitted written comments to DEQ, concluding that the proposed site-specific standard was fully protective of listed Snake River fall Chinook and Idaho's specific temperature standard is appropriate for the designated segment of the Snake River.

## XV.

Snake River fall Chinook continue to spawn successfully in the segment of the Snake River below Hells Canyon Dam that is subject to Idaho's site-specific standard. Current conditions are supporting the designated beneficial use for the Snake River below Hells Canyon Dam. NOAA submitted comments to DEQ during Idaho's rulemaking stating that NOAA has found the then current conditions were protective of Snake River fall Chinook spawning. Based

COMPLAINT                                                                                          -6

in part on this evidence, DEQ determined that the new site-specific standard is protective of Snake River fall Chinook spawning.

## XVI.

In 2009, the United States Department of Justice, on behalf of the United States, stated before the United States District Court for the District of Oregon that "Snake River fall Chinook is [sic] doing great. This is a great ESU for us. It's one of our stars." The Department of Justice further advised that court, that "for five of the last six years Snake River fall Chinook has been over the recovery criteria."

## XVII.

Based on NOAA's expert opinions about the needs of the species, outside scientific peer review of the proposal and other technical data and scientific analysis submitted in the rulemaking, DEQ modified the rule originally proposed by Idaho Power, finalized and submitted this site-specific standard to protect Snake River fall Chinook spawning in the Snake River below Hells Canyon Dam to the Idaho Board of Environmental Quality on November 11, 2011. The revised site-specific standard provides that for a two-week period, the temperature standard for the period October 23 through November 6 will step down from 19°C to 14.5°C. After November 6, the existing 13ºC standard remains in place. DEQ's site-specific rule was adopted by the DEQ Board. The revised site-specific rule was approved by the 2012 Idaho Legislature and became effective under Idaho law on March 29, 2012.

## XVIII.

DEQ submitted Idaho's site-specific salmon spawning temperature standard to EPA for approval on June 8, 2012. The submittal included a complete administrative record supporting Idaho's approval of the revised standard describing the methods used and analyses conducted to

COMPLAINT                                                                    -7

support Idaho's determination. Idaho's Attorney General's office certified that the standard was promulgated in accordance with Idaho's legal procedures for revising or adopting standards.

## XIX.

In March of 2014, more than 20 months after receiving Idaho's submittal, a representative of Region 10, Angela Chung, wrote to Michael McIntyre at DEQ requesting additional information from DEQ relative to Idaho's site-specific standard. The information EPA requested related solely to Snake River fall Chinook, including redd counts, adult returns, age distributions, DNA genotyping and percentage of hatchery fish. This request suggested that EPA intended to evaluate the impact of Idaho's site-specific standard on Snake River fall Chinook. DEQ provided EPA with the requested information in 2014. Even so, EPA has not acted on Idaho's site-specific standard as required by CWA § 303(c) and has not requested additional information from DEQ.

## XX.

In November 2017, NOAA Fisheries issued a final "ESA Snake River Fall Chinook Salmon Recovery Plan." That Plan recognized that Chinook Salmon that enter the fresh water in the summer and fall, like Snake River fall Chinook Salmon, tolerate and spawn in warmer waters than spring/summer Chinook Salmon. Water temperature between 14.5°C and 16.0°C in a declining temperature regime does not result in significant egg mortality for Snake River fall Chinook Salmon. These protective water temperatures are above the criteria established by Idaho's site-specific criteria.

## XXI.

On December 4, 2017, concerned that EPA had not acted on Idaho's site-specific standard for salmonid spawning below Hells Canyon Dam on the Snake River, the Governor of Idaho, C.L. "Butch" Otter, wrote to EPA Administrator Pruitt requesting that EPA advise the

COMPLAINT                                                                                          -8

state that its site-specific standard complies with the CWA. A copy of Governor Otter's letter is attached as Exhibit B.

## XXII.

On April 23, 2018, Regional Administrator, Chris Hladick, wrote to Governor Otter stating that he was responding on behalf of Administrator Pruitt to Governor Otter's December 4, 2017 letter. Administrator Hladick stated that EPA preferred to work with Idaho and Oregon on the states' 401 certifications, and further stated "The EPA has not yet taken action on Idaho's site-specific temperature standard." Administrator Hladick's response requires that Idaho's 401 certification take place under the pre-existing salmonid spawning temperature standard, which directly, substantially and adversely affects the potential conditions of certification and potentially increasing costs of compliance to Idaho Power. A copy of this letter is attached as Exhibit C.

## XXIII.

By failing to act on Idaho's submission of its standard in the statutorily required timeframes, EPA is continuously violating a nondiscretionary duty under the CWA on a daily basis. 33 U.S.C. § 1313(c)(3) & (4).

## LEGAL BACKGROUND

### I.   The Clean Water Act

## XXIV.

Under the CWA, states have primary responsibility for establishing water quality standards. States must submit those standards to EPA for review and approval before they become effective. 33 U.S.C. § 1313(c)(2)(a); 40 C.F.R. § 131.6. EPA's review is limited. EPA's regulations specifically contemplate that states may adopt site-specific standards. EPA's Region 10 Guidance for Pacific Northwest State and Tribal Temperature Water Quality Standards

COMPLAINT                                                                          -9

recognize that site-specific standards are particularly appropriate for water temperature standards because of the varying stream conditions, the varying types of salmonids and how they have adapted to thermal regimes.

## XXV.

EPA has a mandatory duty to review and approve any site-specific standard before it takes effect. 40 C.F.R. § 131.21. EPA is required to review the state's water quality standards based solely on whether the state's standards meet the requirements of the CWA by protecting the designated beneficial uses.

## XXVI.

Congress intended the EPA's role in review of state water quality standards to be limited to determining whether the standards meet the minimum requirements of the CWA.

## XXVII.

EPA has no authority and no discretion to disapprove a state water quality standard that meets the requirements of the CWA and protects the designated beneficial uses.

## XXVIII.

EPA must notify the state within 60 days that a new or revised water quality standard meets the requirements of the CWA. 33 U.S.C. § 1313(c)(3). If EPA concludes that changes are necessary to the state standard to meet the requirements of the CWA, EPA must notify the state within 90 days of the date of the submission and "specify the changes to meet such requirements." *Id*.

## XXIX.

DEQ submitted Idaho's revised site-specific standard to EPA on June 8, 2012. This site-specific standard was promulgated in accordance with Idaho law, the CWA and EPA regulations. DEQ's submission package was complete and met the requirements of EPA's regulation for

COMPLAINT                                                                                         -10

submission of water quality standards. EPA has not notified Idaho of any procedural deficiencies with DEQ's June 8, 2012 submission.

## XXX.

Idaho's proposed site-specific standard has been pending before EPA for over five (5) years. EPA is violating a nondiscretionary duty under the CWA on a daily basis by failing to take any action on the standard in the statutorily required time frame of 60 to 90 days. 33 U.S.C. § 1313(c)(3).

## XXXI.

EPA insistence that Snake River temperature issues be dealt with in the relicensing process of the Hells Canyon Project is not a permissible basis for EPA's refusal to act on Idaho's site-specific standard.

## XXXII.

The CWA authorizes suits by citizens against the Administrator where the person alleges a failure of the Administrator to perform a nondiscretionary act or duty under the CWA. 33 U.S.C. § 1365(a)(2)

## II.    The Administrative Procedure Act

## XXXIII.

Under the APA, a court "must set aside an agency's decision if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## XXXIV.

Idaho's revised site-specific standard is based on the best scientific evidence. This evidence was peer reviewed and accepted by leading fisheries scientists. NOAA commented directly to DEQ during the negotiated rulemaking that the revised standard proposed by DEQ is

COMPLAINT                                                                      -11

fully protective of the beneficial use, salmonid spawning, and that a site-specific standard was appropriate for the segment of the Snake River below Hells Canyon Dam.

## XXXV.

In its September 2011 comments to DEQ during the negotiated rulemaking, EPA advised DEQ that it should not proceed with the rulemaking. Instead, EPA urged DEQ to concern itself with the relicensing of Idaho Power's Hells Canyon Complex and stated that the current salmonid spawning standards should remain in place during the relicensing.

## XXXVI.

EPA must approve state standards that meet the requirements of the CWA. When a state's decision is scientifically defensible and protective of designated uses, EPA must approve the state standard. 33 U.S.C. § 1313(c)(3). EPA has no discretion to disapprove a scientifically defensible standard. Failure to approve a scientifically defensible standard is arbitrary and capricious. Failure to approve a standard that NOAA has determined is protective of the listed species because EPA believes the standard may not be protective is arbitrary and capricious.

## XXXVII.

By injecting extra-scientific considerations associated with the HCC relicensing into its required review of Idaho's site-specific standard, and by intentionally delaying action on Idaho's submission of its standard to reach the result EPA advocated in its 2011 letter to DEQ and its 2018 letter to Governor Otter, EPA is relying on factors Congress did not intend it to consider when acting on site-specific standards.

## XXXVIII.

EPA's preference to retain the current salmonid spawning standard during the pendency of the relicensing of the HCC, and its intentional decision to avoid acting on the site-specific standard, is *ultra vires* of its authority, arbitrary and capricious and not in accordance with law.

COMPLAINT                                                                                          -12

## XXXIX.

EPA's attempt to avoid its legal requirement to timely act on the site-specific standard exceeds EPA's limited regulatory role under the CWA and is arbitrary and capricious. EPA's failure to carry out its nondiscretionary duty to timely act on Idaho's site-specific standard as mandated by the CWA is arbitrary, capricious, not in accordance with law and violates the APA.

## CLAIMS FOR RELIEF

## COUNT ONE

**EPA has Violated a Mandatory Duty Under the CWA by Failing to Act on Idaho's Site-Specific Standard**

## XL.

Idaho Power repeats and realleges the allegations set forth in all preceding paragraphs, I-XXXIX.

## XLI.

States must submit revised or newly adopted water quality standards to EPA for its review. 33 U.S.C. § 1313(c)(2)(A).

## XLII.

EPA must notify the state within 60 days if the new or revised standards comply with the CWA, or it must advise the state within 90 days of submittal of what changes are necessary to the standard to comply with the CWA. 33 U.S.C. § 1313(c)(3).

## XLIII.

On June 8, 2010, IDEQ submitted its revised site-specific salmonid spawning temperature standard to EPA for approval. EPA has failed to take any action on this standard for over five (5) years.

COMPLAINT                                                                                  -13

## XLIV.

In failing to take action on Idaho's submission of the site-specific criteria, EPA has violated its mandatory duty to act pursuant to the CWA. 33 U.S.C. § 1313(c).

## COUNT TWO

**EPA's Unreasonably Delayed and Unlawfully Withheld Actions Violate the APA.**

### XLV.

Idaho Power repeats and realleges the allegations set forth in all preceding paragraphs, I-XXXIX.

### XLVI.

EPA is a federal agency within the meaning of the APA. 5 U.S.C. §§ 551(1) and 701(b)(1).

### XLVII.

EPA has a mandatory duty to approve or disapprove and remand Idaho's site-specific standard within 60 or 90 days, respectively, from the state's submittal.

### XLVIII.

EPA has refused to act on Idaho's site-specific salmonid spawning temperature standard since it was submitted over five (5) years ago.

### XLIX.

EPA's failure to carry out its duty to timely approve or disapprove and remand Idaho's site-specific standard as mandated by the CWA is arbitrary, capricious, not in accordance with law and thus a violation of the APA.

///

///

COMPLAINT                                                                                                    -14

## COUNT THREE

**EPA's Consideration of Extra-Scientific Factors in Relation to Idaho Water Quality Standard is *Ultra Vires*, Arbitrary and Capricious and Violates the APA.**

### L.

Idaho Power repeats and realleges the allegations set forth in all preceding paragraphs, I-XXXIX.

### LI.

Under the CWA, Idaho is responsible for establishing water quality standards for its water bodies, including any site-specific standard adopted for salmonid spawning below Hells Canyon Dam.

### LII.

EPA's statements in its comments filed with DEQ and in its letter to Governor Otter stating that Idaho should forgo the site-specific standard rulemaking and instead require that relicensing of the Hells Canyon Project take place only under the current salmonid spawning criteria exceeds the authority and regulatory role of EPA under the CWA.

### LIII.

EPA must approve water quality standards that meet the requirements of the CWA, and that review is based on whether the state's decision is scientifically defensible and protective of designated uses. 33 U.S.C. § 1313(c)(3). EPA has no discretion or authority to disapprove a state standard that meets these requirements of the CWA.

### LIV.

EPA has raised extra-scientific considerations based on EPA's preference for licensing the Hells Canyon Project under the existing standards, rather than carrying out its obligations to review and approve state water quality standards that comply with the CWA. In doing so, EPA

COMPLAINT                                                                                    -15

injected factors Congress did not intend EPA to consider into the site-specific standard review process.

### LV.

An agency determination is arbitrary and capricious when the agency has relied on factors which Congress has not intended it to consider, as EPA has willfully done with respect to the site-specific standard.

### REQUEST FOR RELIEF

WHEREFORE, Idaho Power prays for the issuance of a Declaratory Order, declaring that:

1.     EPA and the named Defendants have violated the CWA by failing to act on Idaho's site-specific standard.

2.     EPA and the named Defendants have no discretion or authority to disapprove a site-specific water quality standard that meets the requirements of the CWA.

3.     NOAA Fisheries has determined that Idaho's site-specific water quality standard fully protects the beneficial use that the standard is designed to protect: Snake River fall Chinook.

4.     EPA and the named Defendants must act upon and approve Idaho's site-specific standard without regard to EPA's preference to have the Hells Canyon Project licensed under the existing temperature standard.

5.     Granting such other relief as the Court deems necessary and proper, or that is just and equitable.

///

///

///

COMPLAINT                                                                                  -16

And, Idaho Power prays for the issuance of an injunction, requiring:

1.      That EPA and the named Defendants be directed to approve Idaho's site-specific standard within 30 days or provide the state with the notices of the changes necessary to meet the requirements of the CWA.

2.      That EPA and the named Defendants be enjoined from relying on EPA's preference to relicense the Hells Canyon Project under the existing standards as a basis for disapproving Idaho's site-specific standard.

3.      That EPA and the named Defendants be enjoined to rely upon NOAA Fisheries' expert conclusion of NOAA that Idaho's site-specific standard fully protects Snake River fall Chinook.

4.      That EPA and the named Defendants be enjoined from disapproving Idaho's site-specific standard without affirmative demonstration that Idaho's and NOAA's decision that the standard protects the beneficial use of Snake River fall Chinook is not scientifically defensible.

Idaho Power further requests that this Court:

1.      Award Idaho Power its reasonable fees, costs, expenses and disbursement, including attorney's fees, associated with this litigation. As a direct and proximate result of the Defendants' failure and refusal to perform their statutory duties to approve or disapprove a state water quality standard in accordance with the Clean Water Act, Idaho Power has been required to employ the services of counsel and has incurred costs and attorney's fees and will continue to incur such costs and fees.

2.      Granting such other relief as the Court deems necessary and proper, or that is just and equitable.

///

///

COMPLAINT                                                                                          -17

DATED this 6th day of June, 2018.

Respectfully submitted,

**BARKER ROSHOLT & SIMPSON LLP**


/s/ Albert P. Barker

Albert P. Barker
*Attorneys for Idaho Power Company*

# EXHIBIT A

*ALBERT P. BARKER*
*JOHN A. ROSHOLT*
*JOHN K. SIMPSON*
*TRAVIS L. THOMPSON*
*SHELLEY M. DAVIS*
*PAUL L. ARRINGTON*
*SCOTT A. MAGNUSON*
*SARAH W. HIGER*



BARKER
ROSHOLT
&
SIMPSON
LLP

1010 W. Jefferson, Ste 102
Post Office Box 2139
Boise, ID 83701-2139
(208) 336-0700 telephone
(208) 344-6034 facsimile
brs@idahowaters.com

195 River Vista Place, Suite 204
Twin Falls, ID 83301-3029
(208) 733-0700 telephone
(208) 735-2444 facsimile
jar@idahowaters.com

*Albert P. Barker*
apb@idahowaters.com

*Sarah W. Higer*
swh@idahowaters.com

**VIA CERTIFIED MAIL**
Gina McCarthy
Administrator
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Dennis McLerran
Regional Administrator
U.S. EPA Region 10
1200 Sixth Avenue, Suite 900
Seattle, WA 98101

Re:     Sixty-Day Notice of Intent to Sue for Violations of the Endangered Species Act,
        the Clean Water Act and the Administrative Procedures Act

Dear Ms. McCarthy and Mr. McLerran:

This letter provides notice ("Notice of Intent") that Idaho Power Company ("IPC") intends to file
a lawsuit against the U.S. Environmental Protection Agency ("EPA") pursuant to Section
11(g)(1)(A) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(1)(A), Section
505(a)(2) of the Clean Water Act ("CWA"), 33 U.S.C. §1365(a)(2) and Section 706 of the
Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), if the violations described herein
are not corrected within 60 days.  EPA has violated the ESA, the CWA, and the APA in
numerous ways related to the decision by the State of Idaho to promulgate a site-specific
temperature standard to protect the beneficial use of salmonid spawning in the Snake River
below Hells Canyon Dam.  By copies of this letter, IPC is providing notice to the U.S. Fish and
Wildlife Service ("FWS") and the National Marine Fisheries Service ("NOAA Fisheries")
(collectively, the "Services") of IPC's notice of intent to sue EPA, and also serving the Attorney
General with a copy of this notice pursuant to 40 C.F.R. § 135.2.

Environmental Protection Agency
October 31, 2013
Page 2

I.      Summary of Violations

In 2010, in compliance with EPA's regulations, IPC petitioned the Idaho Department of
Environmental Quality ("DEQ") to adopt revised site-specific temperature criteria for fall
Chinook spawning in the Snake River below Hells Canyon Dam[1]. In response to that petition,
DEQ initiated negotiated rulemaking, which IPC participated in. After carefully reviewing the
evidence submitted in the negotiated rulemaking process, including peer reviews undertaken by
eminent scientists in the field of salmon biology and migration and written comments by NOAA
Fisheries stating that the proposed standard was fully protective of ESA listed Snake River fall
Chinook,[2] DEQ presented the proposed rule for a site-specific temperature standard to protect
fall Chinook spawning in the Snake River below Hells Canyon Dam to the Idaho Board of
Environmental Quality on November 11, 2011. The proposed rule was adopted by the Board
with no changes. The rule was finalized by the 2012 Idaho Legislature and became effective
under Idaho law on March 29, 2012. The revised standard provides for a two week step-down
period for transition in temperatures from October 23 through November 6. DEQ submitted its
revised site-specific temperature criteria for fall Chinook spawning to EPA on June 8, 2012.
This proposed site-specific temperature standard has been pending before EPA for over a year,
and EPA is violating a nondiscretionary duty under the CWA on a daily basis by failing to take
any action on the standard in the statutorily required timeframe of 60 to 90 days.  33 U.S.C.
§1313 (c)(3)&(4).

The critical question in EPA's review of a revised standard under the CWA is whether the
standard is protective of the designated beneficial use, in this case fall Chinook spawning below
Hells Canyon Dam.  ESA Section 7(a)(2) places the additional obligation upon EPA of
consulting with NOAA Fisheries or FWS if EPA determines that a new or revised standard may
affect an ESA listed species or its critical habitat. Snake River fall Chinook spawn below Hells
Canyon Dam and were listed as a threatened species under the ESA in 1992.[3]  There is clear
evidence that Snake River fall Chinook salmon are spawning successfully and that current
conditions are supporting the designated beneficial use for the Snake River below Hells Canyon
Dam.[4]  Based in part on this evidence, the State of Idaho determined that the revised standard is
protective of fall Chinook spawning, and comments filed by NOAA Fisheries in the negotiated

---

[1] "EPA recognizes that there are instances in which designated uses may be achieved and protected by
criteria less stringent than generally applicable water quality criteria." *Idaho Mining Ass'n, Inc. v.
Browner*, 90 F. Supp. 2d 1078, 1103 (D. Idaho 2000)(citing 47 Fed. Reg. at 49238: "There are water
bodies that support the designated uses even though the Section 304(a) numerical criteria included in the
state's standard are exceeded.").  EPA thus "promulgated 40 C.F.R. § 131.11(b)(1)(ii) to allow states to
modify water quality criteria where the state determines that water conditions are acceptable for the
designated use even though the generally applicable criteria are exceeded." *Id.*

[2] Snake River fall Chinook are listed as a threatened species under the ESA, 57 Fed. Reg. 14653 (April
22, 1992).

[3] *Id.*

[4] Natural adult returns to the Snake River have increased from 78 in 1990 to almost 11,000 in 2012. Total
adult returns (natural and hatchery) to the Snake River in 2013 thus far have exceeded 50,000 adults.

Environmental Protection Agency
October 31, 2013
Page 3

rulemaking indicate that it concurs. NOAA has jurisdiction over Snake River fall Chinook and is the consulting agency for ESA § 7(a)(2). EPA may conclude that ESA consultation is not required under the ESA if it determines that the revised standard has "no effect" upon fall Chinook below Hells Canyon Dam.[5] But such a determination will be tantamount to finding that the standard is protective of salmonid spawning, requiring that the revised standard be approved, as EPA has no authority to disapprove a standard that meets the requirements of the CWA. If, however, EPA has reached even a preliminary conclusion that approval of the site-specific criteria standard "may affect" fall Chinook, EPA has a non-discretionary duty to consult with NOAA Fisheries under Section 7 of the ESA before taking action on the standard. To date, EPA has neither made a "no effect" determination nor consulted with NOAA Fisheries.

Idaho's revised site-specific temperature standard is based on the best scientific evidence, evidence that has been peer reviewed and accepted by leading fisheries scientists. Moreover, NOAA Fisheries provided comments in the negotiated rulemaking record that the revised standard is fully protective of the beneficial use, salmonid spawning, and that a site-specific standard was appropriate for this stretch of the Snake River. *NOAA Fisheries Comments to IDEQ on Idaho's Site-Specific Criteria* (August 25, 2011) at 7.

In September 2011 comments to the negotiated rulemaking, EPA recommended that DEQ not proceed with the rulemaking and urged the finalization of the relicensing of Idaho Power's Hells Canyon Complex ("HCC") process by FERC with the current salmon spawning criterion in place. EPA's insistence on avoiding the legal requirement to timely act on the site-specific criteria standard goes beyond the regulatory role and obligation of EPA under 33 U.S.C. §1313 (c)(3)&(4) of the CWA and is unreasonably delaying the § 401 certification process under the CWA and completion of HCC relicensing process by FERC.

In reviewing a proposed water quality standard, EPA must approve those standards that meet the requirements of the CWA, including a determination of whether the states' decision is scientifically defensible and protective of designated uses. 33 U.S.C. § 1313(c)(3); *Natural Res. Def. Council, Inc. v. U.S. E.P.A.*, 16 F.3d 1395, 1401 (4th Cir. 1993)(citing 40 C.F.R. §§ 131.5(a), 131.6(c), 131.11(a) & (b)). By conflating this obligation with "extra-scientific considerations" associated with the HCC relicensing, EPA is injecting "factors Congress did not intend it to consider" into the standard review process. *NW. Envtl. Advocates v. U.S. E.P.A.*, 855 F. Supp. 2d. 1199, 1230 (D. Or. 2012) (quoting *Lands Council v. McNair*, 629 F.3d 1070, 1074)(internal quotations omitted). An agency determination is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider. *Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 384 F.3d 1163, 1170 (9th Cir. 2004)(citing *Motor Vehicle*

---

[5] Should EPA determine that a new or revised standard has no effect, "…EPA may record the determination for its files and no consultation is required." EPA has agreed to share any biological evaluation, "no effect" determination, and supporting documentation used to make a "no effect" determination with NOAA Fisheries and FWS upon request. *Memorandum of Agreement Between the Environmental Protection Agency, Fish and Wildlife Service and National Marine Fisheries Service Regarding Enhanced Coordination under the Clean Water Act and Endangered Species Act*, January 10, 2001, 66 Fed. Reg. 11202, 11214 (February 22, 2001).

Environmental Protection Agency
October 31, 2013
Page 4

*Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d
443 (1983). Accordingly, EPA's preference to avoid acting on the site-specific proposal is *ultra
vires* of its authority and thus arbitrary and capricious. *NW. Envtl. Advocates v. U.S. E.P.A.,* 855
F. Supp. 2d at 1231. In any event, DEQ declined to follow EPA's recommendation and adopted
the site-specific criteria change. EPA's political preference that DEQ stand down has no bearing
on its duty to consult under the ESA or on its duty to act on the lawfully adopted Idaho site-
specific criteria change under the CWA.

II.     Legal Framework

Under ESA Section 7(a)(2), "[e]ach federal agency shall ... insure that any action authorized,
funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any
endangered species or threatened species or result in the destruction or adverse modification of
[critical] habitat of such species." 16 U.S.C. § 1536(a)(2). Section 7(a)(2) imposes a procedural
duty on the "action agency" (EPA) to consult with the "consultation agency" (i.e., either FWS or
NOAA Fisheries) if the agency's action "may affect" a listed species. *Nat'l Wildlife Fed'n v. Fed.
Emergency Mgmt. Agency,* 345 F. Supp. 2d 1151, 1167(W.D. Wash. 2004) (citing 50 C.F.R. §
402.14(a); *Turtle Island Restoration Network v. National Marine Fisheries Service,* 340 F.3d
969, 974; *Pacific Rivers Council v. Thomas,* 30 F.3d 1050, 1054 n. 8 (9th Cir. 1994)).

EPA has admitted that approval of state water quality standards triggers a duty to consult under
Section 7 of the ESA. *See Sierra Club v. U.S. E.P.A.,* 162 F. Supp. 2d 406, 422 (D. Md. 2001).
Furthermore, EPA and the Services have agreed that consultation is required if "EPA determines
that its approval of any of the standards may affect listed species or designated critical habitat."
*Memorandum of Agreement Between the Environmental Protection Agency, Fish and Wildlife
Service and National Marine Fisheries Service Regarding Enhanced Coordination Under the
Clean Water Act and Endangered Species Act* ("ESA/CWA MOA") 66 Fed. Reg. 11202 (Feb.
22, 2001), at 11214.

Consultation is unnecessary only if the proposed action will have "no effect" on a listed species
or critical habitat. *Karuk Tribe of California v. U.S. Forest Serv.,* 681 F.3d 1006, 1027 (9th Cir.
2012), *cert. denied,* 133 S. Ct. 1579, 185 L. Ed. 2d 575 (2013). Once an agency has determined
that a proposed action "may affect" a listed species or critical habitat, the agency must consult
with the appropriate expert wildlife agency. *Id.* If EPA and NOAA Fisheries jointly determine
that the proposed action is not likely to adversely affect any listed species or critical habitat, no
further action is necessary. 50 C.F.R. § 402.13(a) and § 402.14(b)(1).

If no such concurrence is reached between the action agency and the consultation agency, formal
consultation must be undertaken. *Nat'l Wildlife Fed'n v. Fed. Emergency Mgmt. Agency,* 345 F.
Supp. 2d 1151, 1168 (W.D. Wash. 2004) (referencing 50 C.F.R. § 402.13(a); *Pacific Rivers
Council v. Thomas,* 30 F.3d 1050, 1054 n. 8).

The ESA "requires federal agencies to consult with the Fish and Wildlife Service or NOAA
Fisheries Service *before* taking 'any action authorized, funded, or carried out by such agency'
that might harm a listed species." 16 U.S.C. § 1536(a)(2); *Karuk Tribe of California v. U.S.*

Environmental Protection Agency
October 31, 2013
Page 5

*Forest Serv.*, 681 F.3d 1006, 1032 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1579, 185 L. Ed. 2d 575 ( 2013) (emphasis added). Consultation is vital to compliance with the ESA. *Greenpeace v. NMFS*, 106 F. Supp. 2d 1066, 1072 (failure to obtain a comprehensive biological opinion "constitutes a substantial violation of the procedural requirements of the ESA").

The ESA requires completion of formal consultation within a 90-day period. 16 U.S.C. §1536(b)(1)(A); 50 C.F.R. 402.14(e); *see also Endangered Species Act Consultation Handbook: Procedures for Conducting* Section 7 Consultation and Conferences ("Consultation Handbook"), U.S. Fish & Wildlife Service and National Marine Fisheries Service, March 1998, at 4-7 ("The consultation timeframe cannot be 'suspended.' If the Services need more time to analyze the data or prepare the final opinion, or the action agency needs to provide data or review a draft opinion, an extension may be requested by either party. Both the Services and the action agency must agree to the extension. Extensions should not be indefinite, and should specify a schedule for completing the consultation.")

Under the CWA, States have primary responsibility for establishing water quality standards. States must submit those standards to EPA for review and approval before they become effective. 33 U.S.C. §1313(c)(2)(A); 40 C.F.R. § 131.6. EPA's regulations allow for site-specific criteria[6] and EPA must review and approve any site-specific criterion before it takes effect. 40 C.F.R. § 131.21; *Nw. Envtl. Advocates v. U.S. E.P.A.*, 268 F. Supp. 2d 1255, 1269 (D. Or. 2003). EPA "reviews and approves/disapproves the standards based on whether the standards meet the requirements of the CWA and the Water Quality Standards Regulation." *EPA Water Quality Handbook*, at 6.2. EPA has no authority to disapprove a standard that meets the requirements of the CWA. The courts have consistently held the "primary responsibility for establishing appropriate water quality standards is left to the states, meaning that the EPA sits in a reviewing capacity of the state-implemented standards, with approval and rejection powers only." *Barnum Timber Co. v. U.S. E.P.A.*, 835 F. Supp. 2d 773, 780-81 (N.D. Cal. 2011) (quoting *Natural Res. Def. Council, Inc. v. EPA*, 16 F.3d 1395, 1399 (4th Cir. 1993)(internal quotations omitted). EPA must notify the state within 60 days if it approves the new or revised standards as complying with the CWA. 33 U.S.C. §1313 (c)(3). If EPA disapproves the state standards, it must notify the state within 90 days of the date of the submission and "specify the changes to meet such requirements." *Id.* The state then has 90 days to make the suggested changes. *Id.* If the state does not make those changes, EPA is required to "promptly" revise the standards, within 90 days after publication of the revised standards. 33 U.S.C. §1313 (c)(4). "[T]he time restriction for the EPA's review of state ... water quality standards supports our conclusion that Congress intended the EPA to have a very limited role." *City of Albuquerque v. Browner*, 97 F.3d 415, 425 (10th Cir. 1996).

Under the APA, a court "must set aside an agency's decision if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *NW. Coal. for Alternatives to Pesticides (NCAP) v. U.S. E.P.A.*, 544 F.3d 1043, 1047 (9th Cir. 2008); 5 U.S.C. § 706(2)(A). The court must determine whether the agency's decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oreg. Natural*

---

[6] 40 C.F.R. §§ 131.11(a), (b)(1)(ii).

Environmental Protection Agency
October 31, 2013
Page 6

*Res. Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989) (internal quotation marks omitted). An agency determination is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider. *Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers,* 384 F.3d 1163, 1170 (9th Cir. 2004)(citing *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). When EPA interjected the HCC relicensing into its determination on the site-specific criteria water quality standard, it relied on a factor which Congress did not intend it to consider with respect to state water quality standards, and was therefore arbitrary and capricious. EPA's failure to carry out its duty to timely approve or disapprove Idaho's site-specific criteria as clearly mandated by the CWA is arbitrary, capricious, not in accordance with law, and thus a violation of the APA. *Idaho Conservation League v. Browner,* 968 F. Supp. 546, 549 (W.D. Wash. 1997).

Similar allegations regarding EPA's failure to comply with the CWA and ESA with regard to Idaho water quality standards have been made in a case pending before the United States District Court for the District of Idaho, Case No. 1:13-cv-00263-EJL, *Northwest Environmental Advocates v. The National Marine Fisheries Service, et al.* As IPC's substantive rights could be affected by the outcome of that case, it is filing this Notice of Intent at this time so that its rights are not harmed or prejudiced by actions (including actions by EPA) in that separate proceeding.

III.    Identity of Counsel

This Notice of Intent is served upon EPA by the Idaho Power Company, which is an investor-owned utility headquartered and incorporated in Idaho, represented in this matter by Senior Counsel James C. Tucker, whose address and contact information is:

James C. Tucker
P.O. Box 70
1221 W. Idaho St.
Boise, ID 83702
(208) 388-2112

IV.    Conclusion

EPA has violated the CWA, the ESA and the APA, by failing to act on Idaho's site-specific criteria standard, by failing to consult with NOAA Fisheries before taking action on Idaho's site-specific criteria standard within the time frames required by law, and by injecting extra-scientific considerations into a scientific determination.

If EPA does not cure the violations of law described above immediately, upon expiration of the 60 days IPC intends to file suit against EPA pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(1)(A), the CWA, 33 U.S.C. §1365(a)(2), and the APA, 5 U.S.C. § 706(2)(A).

The purpose of a NOI is to offer the agency a chance to remedy the violations of its duty before a lawsuit is filed. Accordingly, IPC invites EPA to discuss the significant violations described

Environmental Protection Agency
October 31, 2013
Page 7

herein and seek a mutually acceptable solution to them.  Please contact James Tucker or the undersigned.

Very truly yours,

**BARKER ROSHOLT & SIMPSON LLP**

Albert P. Barker
Sarah W. Higer

APB/se

cc (via certified mail):
        Sally Jewell
        Secretary of the Interior
        U.S. Department of the Interior
        1849 C Street NW
        Washington, D.C. 20240

        Penny Pritzker
        Secretary of Commerce
        U.S. Department of Commerce
        1401 Constitution Avenue, NW
        Washington, D.C. 20230

        William W. Stelle, Jr., Regional Administrator
        NOAA Fisheries
        7600 Sand Point Way NE
        Seattle, WA 98115-0070

        Robyn Thorson, Regional Director
        U.S. Fish & Wildlife Service
        Pacific Region
        911 NE 11th Avenue
        Portland, OR 97232

        Eric Holder
        Attorney General of the United States
        950 Pennsylvania Avenue
        Washington, DC  20530-0001

        Curt Fransen
        Director, Idaho Department of Environmental Quality
        1410 N. Hilton
        Boise, ID 83706

# EXHIBIT B



C.L. "BUTCH" OTTER
GOVERNOR

December 4, 2017

The Honorable Scott Pruitt, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

Dear Administrator Pruitt,

The Idaho Department of Environmental Quality (IDEQ) undertook rulemaking in 2010 for a site-specific temperature standard for salmonid spawning below Hells Canyon Dam on the Snake River. The rulemaking was based on a temperature standard of 14.5° Celsius for a two-week period at the beginning of the spawning season being protective of Snake River fall Chinook.  At the end of the two-week period, the temperature standard is reduced to 13° C.

The rulemaking was supported by peer reviewers who found the standard fully supportive of Snake River fall Chinook. NOAA Fisheries encouraged adoption of the proposed rule and advised that it would not hurt Snake River fall Chinook or their habitat.

The IDEQ proposed rule adopting the 14.5° C site-specific standard was presented to the Idaho Board of Environmental Quality on November 10, 2011, and adopted with no changes. The rule subsequently was approved by the Idaho Legislature and became effective under Idaho law on March 29, 2012.

IDEQ submitted the 14.5° C site-specific standard to the Environmental Protection Agency (EPA) Region 10 for approval on June 8, 2012. In March 2014, EPA Region 10 asked IDEQ for additional information.  That information was supplied shortly thereafter. To date – more than three years later – EPA Region 10 has taken no further action on the proposed rule.

The Clean Water Act (CWA) authorizes site specific standards, and EPA's Temperature Guidance encourages such standards.[1] EPA's sole responsibility is to determine whether the Idaho standard is scientifically defensible and meets the goals of the CWA to protect the designated use.  EPA has no discretion to turn down a standard that protects the designated use. In this case, the record shows that the Idaho approved standard protects that use – Snake River

---

[1] 40 C.F.R. §131.11 (b)(1)(ii); EPA Region 10 Guidance for Pacific Northwest State and Tribal Temperature Water Quality Standards, at 34.

December 4, 2017
Page 2

fall Chinook salmon continue to spawn in high numbers below Hells Canyon Dam in temperature conditions that are warmer than those adopted in the site-specific standard. EPA is required within 60 days of submission to advise the State that its standards comply with the CWA, or within 90 days of submission provide the State with an explanation of what changes are necessary to comply with the CWA.

Under the statutorily prescribed timeframe, EPA Region 10 was required to either approve the site-specific standard by August 7, 2012 or provide an explanation of necessary changes to Idaho by September 6, 2012. In the nearly 2,000 days that have passed since submittal, EPA Region 10 has done neither. Idaho requests that EPA advise the State that the site-specific standards comply with the requirements of the CWA so that it can become effective immediately.

Thank you for your timely consideration.

As Always – Idaho, "Esto Perpetua"

C.L. "Butch" Otter
Governor of Idaho

cc:    Chris Hladick, EPA Region 10 Administrator
       Senator James E. Risch
       Senator Mike Crapo
       Congressman Mike Simpson
       Congressman Raul Labrador

# EXHIBIT C



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**REGION 10**
1200 Sixth Avenue, Suite 900
Seattle, WA 98101-3140

OFFICE OF THE
REGIONAL
ADMINISTRATOR

APR 2 3 2018

The Honorable C.L. Butch Otter
Governor of Idaho
State Capitol
Boise, Idaho 83720

Dear Governor Otter:

Thank you for your letter dated December 4, 2017, to Mr. Scott Pruitt, Administrator for the U.S. Environmental Protection Agency. We appreciate you taking the time to write to us about the water temperature standard for the Hells Canyon Reach of the Snake River. Administrator Pruitt has asked that I respond to you on his behalf.

As you note, on June 8, 2012, the state of Idaho submitted a site-specific water temperature standard for the Hells Canyon Reach to the EPA for review and action under the Clean Water Act. During the time of Idaho's rulemaking and subsequent submittal of the site-specific temperature standard to the EPA, there were and continue to be discussions regarding the Federal Energy Regulatory Commission re-licensing of the Idaho Power Company's Hells Canyon Complex. The EPA and Idaho have participated in those discussions for many years together with several other state, federal, and tribal partners. Since 2012, the Idaho Power Company developed the Snake River Stewardship Program as part of the FERC re-licensing process.

The SRSP is an innovative water quality and habitat restoration program that is designed, in part, to provide for attainment of the current temperature standards in Oregon and Idaho, as well as meet other objectives of the parties involved in the re-licensing. Both Idaho and Oregon issued draft CWA 401 certifications in December 2016, which included the SRSP as a means to comply with the current temperature standards. We understand that the states are targeting the end of May or early June for concurrently issuing revised draft 401 certifications that will take into account updated information submitted by Idaho Power.

The EPA has prioritized working with Idaho and Oregon to finalize the CWA 401 certifications and is supportive of the significant progress being made. The EPA has not yet taken action on Idaho's site-specific temperature standard and instead is focusing its efforts on coordination with your Department of Environmental Quality and others in order to resolve the last details regarding the re-licensing, notably including ensuring that the measures to address thermal impacts will be sufficient to allow the states to certify that their temperature standards can be met. As the new Region 10 Administrator, I have followed up with the IDEQ Director John Tippets and other interested entities to discuss the standard and the most constructive path forward that will allow for the Federal Energy Regulatory Commission's re-licensing of the Idaho Power Company's Hells Canyon Complex. I will maintain regular communication with Director Tippets as we continue these priority efforts.

Again, thank you for contacting the EPA. If you have further questions or concerns, please contact me or have your staff contact James Werntz, Director of our Idaho Operations Office in Boise, at (208) 378-5743 or by email at Werntz.James@epa.gov.

Sincerely,

Chris Hladick
Regional Administrator

cc:   Mr. John Tippets, IDEQ
      Mr. Barry Burnell, IDEQ
      Mr. Don Essig, IDEQ
      Ms. Kate Brown, Governor, State of Oregon
      Mr. Richard Whitman, ODEQ